

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE | ] | |
| INSURANCE COMPANY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:07-CV-00736-LSC |
| | ] | |
| SHEMEIKA BILLUPS, | ] | |
| | ] | |
| Defendant. | ] | |
| | | |
| SHEMEIKA BILLUPS, | ] | |
| | ] | |
| Third Party Plaintiff, | ] | |
| | ] | |
| vs. | ] | |
| | ] | |
| BESTQUOTE AGENCY, INC., | ] | |
| d/b/a BESTQUOTE.COM, | ] | |
| STEVEN H. RUBIN, *et al.*, | ] | |
| | ] | |
| Third Party Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Third Party Defendant Steven H.

Rubin's ("Rubin") Motion to Dismiss for lack of personal jurisdiction, which

was filed on May 28, 2008.  (Doc. 45.)  Plaintiff American General Life

Insurance Company ("American General") filed suit on April 23, 2007 against Shemeika Billups ("Billups"), seeking a declaratory judgment that the insurance policy issued to Early Davis ("Davis")[1] was effectively rescinded by American General based on material misrepresentations contained in the insurance application.  (Doc. 1.)  Billups answered and filed a counterclaim, asserting claims of breach of contract and bad faith against American General.  (Docs. 7 & 8.)  On October 19, 2007, Billups filed a Third Party Complaint against BestQuote.com, AccuQuote, and Byron Udell & Associates, Inc. alleging breach of contract and negligence/wantonness. (Doc. 21.)  Billups amended her Third Party Complaint on February 19, 2008 to substitute BestQuote Agency, Inc. d/b/a BestQuote.com ("BestQuote") for BestQuote.com and AccuQuote a/k/a Byron Udell & Associates, Inc. d/b/a AccuQuote for AccuQuote,[2] and to add Third Party Defendant Steven H. Rubin.  (Doc. 33.) The issues raised in Rubin's motion to dismiss have been briefed by the parties and are now ripe for consideration.  Upon full

---

[1]The parties refer to Davis as both Earl Davis and Early Davis.  For purposes of this Opinion, these names may be used interchangeably.

[2]On April 29, 2008, Billups's claims against Third Party Defendants AccuQuote a/k/a Byron Udell & Associates, Inc. d/b/a AccuQuote and Byron Udell & Associates, Inc. were dismissed.  (Doc. 42.)

consideration of the legal arguments and evidence presented, the motion is due to be denied.

II.    Facts.[3]

Third Party Plaintiff Billups is an adult resident of Pickens County, Alabama.  (Doc. 1.)  Third Party Defendant Steven H. Rubin is a resident of the State of Ohio (Doc. 46), who was appointed and hired by American General to sell life insurance in Alabama.[4]  In or about October 2004, Rubin sold Earl Davis, decedent, a policy of insurance to be issued by American General.   As part of the sale of the life insurance policy, Third Party Defendants obtained information from Davis, and processed the insurance application.  Rubin and BestQuote received a commission for the sale of life insurance to Davis.  After Davis's death, American General refused to pay the death proceeds and thereafter filed a declaratory judgment action seeking to obtain a judgment that the policy had been effectively rescinded. The insurance application, processed by Rubin and/or other Third Party

---

[3]Unless otherwise indicated, the facts are taken from the Amended Third Party Complaint.  (Doc. 33.)

[4]Rubin is the owner of BestQuote.  (Rubin Aff. ¶ 2.)

Defendants, contained information, which forms the basis of the declaratory judgment action. Billups, the primary beneficiary of Davis's life insurance policy, filed the Third Party Complaint against BestQuote and Rubin, alleging that they breached their contractual allegations and their duty of care during the sale of the insurance policy to Davis.

III.    Standard.

When, as in this case, the Court does not conduct an evidentiary hearing on the question of personal jurisdiction, "the burden is on the Plaintiff to establish a prima facie case of personal jurisdiction over a nonresident defendant." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)(citations omitted). To establish a prima facie case of personal jurisdiction over a non-resident, a plaintiff must present enough evidence to withstand a motion for a directed verdict. *Id.*[5] Where

---

[5]The Eleventh Circuit has also stated:

> First, the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

*Future Techn. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citations omitted).

"the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)(citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999)).  The Court must accept "the allegations in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits and depositions," and must construe all reasonable inferences arising from controverted assertions of fact in the light most favorable to the plaintiff.  *Consolidated Dev. Corp.*, 216 F.3d at 1291.

IV.   Discussion.

Third Party Defendant Rubin contends that this Court should dismiss Third Party Plaintiff's claims against him because this Court lacks personal jurisdiction over him.  The Court's jurisdiction in this case is alleged to be based on diversity jurisdiction.[6]  (Doc. 1.)

---

[6]"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state."  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355 (11th Cir. 2000).

A federal court must conduct a two-part analysis in determining whether it has personal jurisdiction over a non-resident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  Only if both prongs are satisfied will the Court assert jurisdiction.  *Id*.  First, the court will "determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007)(citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Second, the court will "examine whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment." *Id*.  In this case, the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the limits of due process under the United States Constitution and the Alabama Constitution.  *See Ruiz de Molina*, 207 F.3d at 1355-56 ("Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001); ALA. R. CIV. P. 4.2(b)(2004).

Considerations of due process require that the non-resident defendant have certain "minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Sloss Indus. Corp.,* 488 F.3d at 925 (citing *Sculptchair, Inc.,* 94 F.3d at 626 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945))).

A.    Minimum Contacts.

The nature and quality of the requisite minimum contacts "vary depending upon whether the type of personal jurisdiction being asserted is specific or general." *Consol. Dev. Corp.,* 216 F.3d at 1291.

1.    General Jurisdiction.

General personal jurisdiction "arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." *Consol. Dev. Corp.,* 216 F.3d at 1292.  "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id.* (citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055,

1057 (11th Cir. 1986); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).

Third Party Defendant argues that he does not have the requisite "substantial and continuous" contacts with the State of Alabama as to provide the Court with the basis for asserting general jurisdiction.  (Doc. 46 at 6.)  As support for his assertion, Rubin states that he "does not engage in 'continuous and systematic general business contacts' in Alabama;" he has "never personally conducted business in Alabama;" and Third Party Plaintiff "has not and cannot allege facts to establish that Rubin has done business in Alabama under that standard so as to establish general jurisdiction."  *Id.* In response, Third Party Plaintiff states that Rubin's contacts with Alabama "may . . . be sufficient for general personal jurisdiction."  (Doc. 48 at 5.) While Third Party Plaintiff alleges that she believes that Rubin's contacts with the state through advertising, his licensing, and the sale of the insurance policy to Davis may indicate further contacts with Alabama, she contends that she would need to conduct discovery to verify Rubin's contacts with Alabama in order to establish that he had "continuous and systematic" contacts with Alabama to subject him to general personal

jurisdiction. *Id*. at 11.  The Court agrees with Third Party Defendant that it cannot assert general personal jurisdiction over Third Party Defendant. Third Party Plaintiff did not satisfy her burden of proof; therefore, the inquiry must turn to whether the Court may assert specific jurisdiction over Rubin in this case.

> 2.    Specific Jurisdiction.

Specific jurisdiction arises "out of a party's activities in the forum state that are related to the cause of action alleged in the complaint." *Sloss Indus. Corp.*, 488 F.3d at 925 (quoting *McGow v. McCurry,* 412 F.3d 1207, 1214 n.3 (11th Cir. 2005)).  To constitute minimum contacts for purposes of specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: the contacts "must be related to the plaintiff's cause of action or have given rise to it;" the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum," invoking the benefits and protections of its laws; and the contacts "must be such that the defendant should reasonably anticipate being haled into court there."  *Id*. (citation omitted).

In determining whether there are sufficient minimum contacts, the Court must "remember that the conduct at issue is that of the defendants. No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina*, 207 F.3d at 1356 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Id.* Thus, the Court must determine what Third Party Defendant did to purposefully avail himself of the benefits of doing business in Alabama such that he should reasonably anticipate being haled into an Alabama Court.

Rubin argues that specific jurisdiction may not be established over him because any contact he had with Alabama arose from Davis's unilateral activity and because his contacts were made through or on behalf of BestQuote. First, Rubin argues that since Davis unilaterally contacted BestQuote, either by phone or through the website, personal jurisdiction cannot be established because this unilateral activity is not enough to satisfy the minimum contacts requirement. (Docs. 46 & 50.) *See Hanson*, 357 U.S. at 253 (stating that the unilateral activity of the individual claiming a

relationship with a non-resident is not sufficient to establish the requisite

minimum contacts).   However, as discussed more fully below, Rubin's

contacts with the State of Alabama are not based solely on the unilateral

activity of Davis; rather, his contacts with Alabama are based on his holding

a license to solicit new business and procuring insurance for an Alabama

resident thereby availing himself of the privileges of conducting business in

Alabama, the forum state.  *See, e.g., Dillon Equities v. Palmer & Cay, Inc.,*

501 So. 2d 459, 462 (Ala. 1986).

   Next, Rubin cites *South Alabama Pigs, LLC v. Farmer Feeders, Inc.,*

305 F. Supp. 2d 1252 (M.D. Ala. 2004) to support his proposition that his

actions, which were allegedly taken on behalf of BestQuote, were not

sufficient to exercise personal jurisdiction over him.[7]  (Doc. 46 at 6.)  In

---

[7]In *South Alabama Pigs, LLC v. Farm Feeders, Inc.*, two of the defendants, who were
sued in their individual capacity, argued that the court could not exercise personal
jurisdiction over them for actions taken in their corporate capacity.  *See* 305 F. Supp.
2d at 1260.   One of these individuals, McCool, the owner of defendant Audubon
Wholesale and defendant Farm Farmers, had never been to Alabama; did not own
property in Alabama; had never conducted business in Alabama for either Farm Feeders
or Audubon Wholesale; and had never spoken to, corresponded with, or met any
individual associated with the plaintiff, Pigs, LLC.  *See id.* at 1256.  The other individual
defendant, Benton, secretary and director of Farm Feeders, went to Alabama, on behalf
of Farm Feeders, and approached Pigs, LLC about entering into an agreement to supply
weaned pigs to Farm Feeders, representing to Pigs, LLC that Farm Feeders was in the
business of finishing pigs, that it had purchasers willing to buy such pigs, and that McCool

determining whether the court could exercise personal jurisdiction over the

individual defendants, who claimed that personal jurisdiction could not be

based on their actions taken in a corporate capacity, the court stated:

> When dealing with a corporate officer in his individual capacity, personal jurisdiction may not be predicated upon jurisdiction over the corporation itself. To exercise jurisdiction over corporate officers, the officers must have engaged in some activity that would subject them to the State's long-arm jurisdiction. Acts committed by an officer as an agent of the corporation will not subject the officer to personal jurisdiction, unless the corporate form was a sham or facade intended only to protect the individual. Officers may be subject to personal jurisdiction, though, if they have committed torts in Alabama, regardless of whether they acted within their corporate authority at the time the tort was committed. An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama.

*South Alabama Pigs, LLC*, 305 F. Supp. 2d at 1260 (citing *Thames v.*

*Gunter-Dunn*, 373 So. 2d 640, 641 (Ala.1979); *Candy H. v. Redemption*

---

and Audubon Wholesale personally guaranteed the agreement. *See id.* When Pigs, LLC learned of Farm Feeders's alleged misrepresentations, *i.e.*, the representations made in part by Benton, it brought suit alleging fraudulent misrepresentation and suppression, negligent misrepresentation, negligent or wanton hiring and supervision, breach of contract, and conspiracy to commit fraud. *Id.* at 1256-57. The court held that personal jurisdiction existed over Benton because he engaged in tortious conduct in conducting business in Alabama; however, the court dismissed McCool since he did not conduct business in Alabama in any form, Farm Feeders was not his alter ego, and he did not consent to Benton acting as his agent. *Id.* at 1260-61.

*Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala.1983))(internal citations and quotations omitted).

Arguing that his actions were taken in a corporate capacity, Rubin contends that his individual contacts with Alabama are insufficient to subject him to personal jurisdiction in Alabama.  According to his affidavit, Rubin has never been to Alabama; he does not know that he has ever spoken with Earl Davis or Shemeika Billups; he has never directly contacted anyone from Alabama; and he has not personally conducted business in Alabama. (Rubin Aff. ¶¶ 6 & 8.)  He states that Davis either completed an online application for life insurance or contacted BestQuote by phone; the information was recorded and returned to Davis for his review and signature; and that any contact with Davis was on behalf of BestQuote.  *Id.* at ¶ 6-8. Based on this, Rubin contends that his contacts with Alabama were through or on behalf of BestQuote, indicating that he lacked sufficient personal contacts with Alabama to subject him to the jurisdiction of this Court.

A "court cannot exercise personal jurisdiction over a defendant solely on the basis of his employer's contacts with the forum state."  *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 391-92 (11th Cir. 1988).

However, while an individual's contacts with the forum state "are not to be judged according to [his] employer's activities there . . . , [his] status as [an] employee[] does not somehow insulate [him] from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Duke v. Young,* 496 So. 2d 37, 40 (Ala.1986)("an individual is not shielded from liability simply because his acts were done in furtherance of his employer's interest").   The determination of whether the court can assert personal jurisdiction over corporate officers and employees in their individual capacity turns on the assessment of the defendant's individual and personal contacts with the forum state.  *See  Calder*, 465 U.S. at 790.

In this case, in order to determine whether the Court can assert specific personal jurisdiction over Rubin, it will assess Rubin's contacts with the forum state on an individual basis.   While Rubin contends that he "never directly contacted Mr. Davis or anyone from the State of Alabama" (Rubin Aff. ¶ 8), "[d]irect contact by a nonresident defendant with the forum is not required . . . a nonresident defendant may be subject to specific jurisdiction even if his actions giving rise to the suit occurred outside the forum state and he had no direct contact with the plaintiff."

*Ruiz de Molina*, 207 F.3d at 1357 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).  Here, Rubin is licensed to represent American General, and to "solicit new business" in Alabama.[8]  (Doc. 48 Ex. A.)  Also, as evident from his signature on the term insurance application, Rubin conducted business, in some form, with Earl Davis, a resident of Pickens County, Alabama, and expected to receive a commission from the sale of the insurance policy.  (Doc. 48 Ex. B.)  Rubin certified that the information on the insurance application supplied by Davis was truthfully and accurately recorded; therefore, he knew or should have known that he was procuring insurance for an Alabama resident.  *Id.*

Regardless of whether Rubin had direct contact with Alabama in connection with the procurement of this insurance policy, the evidence indicates that: Rubin held a license to solicit new business in Alabama; he chose to do business with Davis, an Alabama resident; he expected to receive a commission, either for himself or for his company BestQuote; and

---

[8]The Alabama state licensing appointment indicates that Steven H. Rubin is "eligible to solicit new business" in Alabama.  (Doc. 48 Ex. A.)  The appointment confirmation does not indicate that this license is for or on behalf or BestQuote nor does the confirmation even mention BestQuote.  *Id.*

he knew or should have known that the insurance he was procuring was for

an Alabama resident.[9]  These facts are sufficient to establish that Rubin

purposefully availed himself of the opportunity to do business with an

Alabama resident.  *See Ruiz de Molina*, 207 F.3d at 1356-57 (where Luellen,

an insurance broker for Worldwide Marine in Michigan, and Worldwide

─────────────────────

[9]Third Party Plaintiff also alleges that Rubin's contacts with Alabama included:
purchasing and using television advertising in Alabama, using a website to obtain
business, certifying and signing the insurance application, and indicating that he was to
receive 100% of the commission from the sale of the insurance policy.  (Doc. 48.)
However, in his second affidavit, Rubin presents evidence indicating that some of these
contacts were by or on behalf of BestQuote.  (Rubin 2d Aff.)  In his affidavit, Rubin states
that "BestQuote advertised on television and also had a website;" and that "I have never
purchased television air time for commercials," rather the air time "was purchased by
BestQuote."  (Rubin 2d Aff. ¶¶ 3 & 4.)  With regard to the insurance application, Rubin
stated that:

> [T]he application was signed on behalf of the agency.   The application
> itself has a signature for the 'writing agent.'  There is no signature line for
> the actual <u>agency</u>.  An application must be signed by an agent himself or
> herself on behalf of an agency.  In fact, the application also contains
> BestQuote's 'agency number.'  The agent information is required and the
> agent is required to sign the application.  However, the business is
> transacted on behalf of the agency.

*Id.* at ¶ 6.  Rubin also stated that with regard to commission, there is no space on the
application to indicate the "Agency to Receive Commission;" therefore, he listed the
agency number on the application and "any payment for the commission was made by
American General and paid directly to BestQuote Agency, Inc.  None of the commission
was paid directly to me."  *Id.* at ¶ 7.  The Court recognizes that Defendant, through his
affidavit, has presented evidence that jurisdiction is not present, and that Billups has
not presented proof to controvert these facts or indicating that they are merely
conclusory.   Plaintiff responds to Rubin's statements regarding his signature and
certification by stating that "[t]here is no indication, however, that Rubin's signature
and certification were in any way simply acts for his company, BestQuote."  (Doc. 52 ¶
3.)  However, in viewing all of the uncontested facts in light most favorable to Plaintiff,
the Court cannot, at this time, hold that Rubin lacks sufficient contacts with Alabama.

Marine were contacted by Smith, an insurance broker in Florida, to procure marine insurance for a boat anchored in Alabama, the court held that there were sufficient contacts with Alabama to subject Luellen and Worldwide Marine to jurisdiction since the defendants chose to do business with an Alabama resident, expected to receive a benefit from that business, knew the insurance was for a boat owned by an Alabama resident located in Alabama, undertook to procure insurance for the boat, and received a commission from the insurance premium); *see also Dillon Equities,* 501 So. 2d at 460-62 (finding that a Georgia insurance agent and the Georgia insurance agency had sufficient minimum contacts with Alabama since they procured and placed insurance coverage on a restaurant that was located in Alabama, knowing that it was located in Alabama at the time of the contract, and they purposefully availed themself of the privilege of conducting business in Alabama by deriving substantial benefit from insuring the restaurant).

In addition, Billups's claims against Rubin arise from Rubin's contacts with the forum state—the procurement of the life insurance policy.  Billups's claims are based on Third Party Defendant's alleged breach of contractual

obligations, breach of duty of care, and negligence/wantonness during the sale of the insurance policy; therefore, Rubin's contacts with Alabama relate to the cause of action.

Further, Rubin should have reasonably anticipated being haled into court in Alabama for claims arising out of the procurement of the insurance policy for an Alabama resident, since the policy was procured for an insured in Alabama.  *See Ruiz de Molina*, 207 F.3d at 1357-58 (stating that the Michigan insurance brokers should have reasonably anticipated being haled into court in Alabama due to the fact that they met the "stream of commerce test for jurisdiction"[10] by putting the insurance policy into the stream of commerce knowing that it would be purchased by and delivered to an Alabama resident for a boat anchored in Alabama); *see also Dillon Equities,* 501 So. 2d at 462 (stating that the Georgia insurance agency and

---

[10]In *World-Wide Volkswagen Corp. v. Woodson,* the Supreme Court stated that the "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its product into the stream of commerce with the expectation that it will be purchased by consumers in the forum State." 444 U.S. at 297-98.  "The stream of commerce test for jurisdiction is met if the nonresident's product is purchased by or delivered to a consumer in the forum state, so long as the nonresident's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there for claims arising out of that conduct." *Ruiz de Molina,* 207 F.3d at 1357 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 298).

agent had good reason to anticipate being haled into Alabama "if they should breach their duty to an insured by negligently failing to procure or maintain adequate insurance coverage for that insured on property situated in Alabama" and that the insurance agent "voluntarily assumed this interstate obligation for profit, and by doing so should have 'reasonably anticipate[d]' being required to appear in Alabama to defend an action such as the present one, which arises out of [his] contracting to insure property located within Alabama").  Rubin directed his forum-related activities, the procurement of the life insurance policy, at Alabama by conducting business with an Alabama resident, and should have reasonably anticipated being haled into court in Alabama since these actions gave rise to the claims against him.  *See Calder,* 465 U.S. at 789-90 (court held that petitioners must "reasonably anticipate being haled into court" in California where petitioners were not charged with "mere untargeted negligence;" rather, their alleged intentional tortious actions were aimed at California; they knew that the article would have a potentially devastating impact upon respondent in California, the state in which she lived; and they knew that the majority of the injury to respondent would occur in California).  By

procuring the life insurance policy for an Alabama resident, Rubin may fairly be held accountable in Alabama for damages resulting therefrom.   *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)(stating that "a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story").   Therefore, the Court finds that sufficient minimum contacts exist for the Court to exercise specific personal jurisdiction over Rubin.

B.     Notions of Fair Play and Substantial Justice.

Once it has been determined that a defendant has at least minimum contacts with a forum, a court must consider whether the assertion of personal jurisdiction would comport with the notions of "fair play and substantial justice." *See Sloss Indus. Corp.*, 488 F.3d at 925.  In determining whether the assertion of personal jurisdiction would comport with the "notions of fair play and substantial justice," the following factors are relevant:  "(1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's

shared interest in furthering fundamental social policies." *Ruiz de Molina*, 207 F.3d at 1358 (citing *Burger King Corp.*, 471 U.S. at 477; *World-Wide Volkswagen Corp.*, 444 U.S. at 292; *Madara*, 916 F.2d at 1517).

Applying these factors to the case at hand, it appears that the assertion of personal jurisdiction over Rubin does not offend the notions of fair play and substantial justice.  The forum, Alabama, has a significant interest in adjudicating this dispute since the insurance policy was procured by Rubin, an individual with an Alabama licensing appointment, for Davis, an Alabama resident.  *See Burger King Corp.,* 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). In addition, Billups, a resident of Pickens County, Alabama, has a substantial interest in obtaining convenient and effective relief through adjudication in Alabama.  Further, the judicial system has a strong interest in resolving this litigation in one piece, instead of part in Alabama and part in another state. Finally, although Rubin would be compelled to travel to Alabama to defend this lawsuit, "modern improvements in transportation and communication significantly lessen this hardship." *Williams Elec. Co., Inc.,* 854 F.2d at 393

(citing *World-Wide Volkswagen*, 444 U.S. at 292-93).   Therefore, the requirements of "fair play and substantial justice" do not defeat the reasonableness of asserting personal jurisdiction over Rubin.

Based on the foregoing, the Court finds that Rubin is not due to be dismissed at this time.

V.    Conclusion.

For the reasons stated above, Third Party Defendant Rubin's motion to dismiss is due to be denied.  A separate order in conformity with this opinion will be entered.

Done this 3<u>rd</u> day of <u>July 2008</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**