FILED

2009 May-11  PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ] ] ] | |
| Plaintiff/Counterclaim Defendant, | ] ] ] | |
| vs. | ] ] | 7:07-CV-00736-LSC |
| SHEMEIKA BILLUPS, | ] ] ] | |
| Defendant/Counterclaim Plaintiff/Third Party Plaintiff | ] ] ] | |
| vs. | ] ] | |
| BESTQUOTE AGENCY, INC., d/b/a BESTQUOTE.COM, STEVEN H. RUBIN, et al., | ] ] ] ] | |
| Third Party Defendants | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration motions for summary judgment, filed

by Shemeika Billups ("Billups") on December 19, 2008 (Doc. 70), American

General Life Insurance Company ("American General") on January 2, 2009

(Doc. 73), and Best Quote Agency, Inc. ("Best Quote") and Steven Rubin ("Rubin") on January 2, 2009 (Doc. 75).

American General filed a Complaint in this Court on April 23, 2007 (Doc. 1), seeking a declaratory judgment that  American General properly denied Billups's life insurance claim on a policy issued to her father, Earl Davis ("Davis"), and that said claim was due to be rescinded based on material representations made by Davis on his policy application.  Billups then filed a counterclaim against American General for Breach of Contract and Bad Faith on May 18, 2007.  (Doc. 8.)  Billups also filed a third party complaint against Best Quote and Rubin on October 19, 2007, for Breach of Contract, Negligence, and Wantonness in procuring the insurance policy for Davis.  (Doc. 21.)  Billups has moved for summary judgment on her claims against American General.  American General, as well as Best Quote and Rubin, have moved for summary judgment on all counts.  The issues raised in the motion for summary judgment have been briefed by the parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Billups's motion will be DENIED while American General, Best Quote, and Rubin's motions will be GRANTED.

II.   Facts.[1]

On October 22, 2004, Davis, a resident of Pickens County, Alabama, signed an application for a life insurance policy with American General. Rubin, the writing agent, and Best Quote submitted the application for insurance to American General on behalf of Davis.  The application contains the signature of Rubin, affixed by someone at Best Quote with a signature stamp by his permission before sending the application to American General for underwriting and approval.  While Rubin does not recall discussing the application with Davis, the policy of Best Quote is to affix the signature of the agent who discussed the application with the applicant.

On or about November 2, 2004, Jenny Meade, a representative from Portamedic, a third-party examination firm, conducted a paramedical exam of Davis, including obtaining blood and urine samples from him, recording his height and weight, and taking his blood pressure.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Once the application was generated, Best Quote mailed it to Davis for his review and signature.  On or about December 3, 2004, American General issued the policy at a Preferred Plus Class Rating.  The Policy had a face amount of $500,000.00 and a monthly premium of $102.38.  The policy was mailed to Davis for his receipt and acceptance.

Davis paid premiums on the policy for approximately eighteen (18) months.  Then, on June 13, 2006, Davis died of a suspected apparent acute myocardial infarction (AMI or heart attack).  The day following his death, Makeba Davis, one of Davis's daughters, notified American General of Davis's death, and Leola Hinton of Lavender Funeral Service contacted American General and requested that the company fax a beneficiary confirmation and death claim packet to the funeral home.

On June 21, 2006, American General sent a letter to Billups, the beneficiary under the policy, advising her of the policy's two year contestable period.  American General stated that, as Davis died within the two year contestable period, it would perform a routine review of the application information.   American General hired an outside agency, National Claim Resources ("NCR") to assist in the investigation.  On June 22,

2006, American General sent a second letter to Billups requesting information necessary to process her claim.

For approximately three months, Ed Edge ("Edge") of NCR assisted American General with its contestability investigation.  American General kept Billups informed of the status of the investigation through a series of letters in August and September of 2006.  Edge rendered a final report to American General on September 8, 2006.

American General requested and received, prior to October 11, 2006, records from the following healthcare providers:  Dr. James Howard Gentry, Jr., Aliceville Rural Health Clinic, Pickens County Medical Center, DCH Hospital/Regional Medical Center, Dr. John A. Mantle, Gastroenterology Consultants of Tuscaloosa, Dr. Howard S. Brown, Dr. Fabial Salinas, Dr. Stephen A. Roberts, Dr. Julia Boothe, and Northport Medical Center. American General also received records from the Pickens County Coroner and the Social Security Administration.

Correspondence from the Social Security Administration revealed Davis began receiving Social Security Disability Income in November 1985 and was

receiving benefits at the time of his death.  Effective December 2005, Davis's monthly benefit totaled $584.00.

On September 8, 2006, Billups submitted to American General Mr. Davis's death certificate and an Amendment to Record of Death evidencing corrected information on the death certificate.

On September 14, 2006, American General's claims examiner assigned to Billups's claim, Sarah Wickes ("Wickes"), submitted a Contestable Claim Referral Form to Nancy Yasso ("Yasso), Director of Underwriting for American General.  The Referral Form asked Yasso, among other things, "Section 2 – Underwriting Review - 1a. Other than listed by the underwriter, what questions on the application appear to have been answered incorrectly or incompletely, and what should the answers have been, based on the information you currently have available?"  The Referral Form also asks, "3. Based upon the answers above, what underwriting action would have been taken, or what action would have been recommended to the Medical Department had the correct and complete information been known?"

Yasso replied to Wickes on September 19, 2006, in an email stating, "1s.  Question 7A.1 should have been answered yes.  History of treated High

Blood Pressure.  Question 7A.8 should have been answered yes.  History of treated Seizure Disorder[.]  Question 7F.4 should have been answered yes. On disability [.]"  Yasso also stated that American General would not have issued the policy as applied for if the correct and complete information had been known.

On October 6, 2006, Wickes submitted a Claims Management Review Form to her manager, Ray Sawicki ("Sawicki") for his review and approval. Wickes noted on the Review Form under a section entitled, "EXAMINER COMMENTS" that "[i]ncome given on app.=$65,000. Made $17,000/yr. Under the table as a farm hand.  Was receiving S.S. disability from 1985 continuously until death.  Disability was not admitted on the application, health hx was not admitted & financial (income & net worth) information was not valid.  Each issue would have been sufficient to prevent the policy from being issued as applied for."

On October 11, 2006, Sawicki signed the Claims Management Review Form.  That same day, American General issued a denial letter to Billups advising her that the company was rescinding Davis's policy due to material misrepresentations on the application related to his "criminal and social

history."  The letter also stated that the decision was based on the facts as known at that time and that American General reserved any and all rights and defenses in connection with the policy.

On October 20, 2006, Billups sent a letter to American General stating that the funeral home had not returned the insurance policy to her but had instead sent the document to American General.  Billups requested that the company return the policy to her.  American General responded that all documents sent to the claims department are digitally scanned and then destroyed after 90 days.  American General provided a printed copy from the scanned record, but this copy contained only the pages returned by the funeral home and not the entire policy.

On December 26, 2006, attorney Timothy McCool ("McCool"), on behalf of Billups, exchanged emails with Wickes regarding the pending premium refund and Billups's claim for benefits.  McCool indicated that Billups felt that she was owed the insurance monies due a benficiary and not just a refund of a policy premium.  Wickes responded that Billups had been informed that American General was rescinding Davis's policy on the grounds of material misrepresentation of medical history at the time of application.

On January 16, 2007, McCool sent an e-mail to Wickes inquiring on the status of his earlier request for documentation and asking Wickes to contact him.  Wickes responded by e-mail dated February 5, 2007, stating that Billups had told her that she was not represented by counsel.  As such, she could not release information to him.

On March 20, 2007, McCool sent a letter to American General stating that "[d]ue to your refusal to pay this claim and further failure to communicate any information regarding the reasons for denial, I have prepared a lawsuit to file on behalf of the beneficiary, Shemeika Billups. If you wish to avoid this by paying the proceeds that are due, you may do so within seven (7) days of the date of this letter. This will be your final opportunity to pay what is owed.  Otherwise, I will file suit accordingly. Thank you for your attention to this matter."  On March 26, 2007, Wickes sent McCool a letter informing him that his March 20, 2007 letter and a copy of the claim file related to the Policy had been forwarded to American General's legal department.

On April 20, 2007, Wickes sent a letter on behalf of American General to Billups, care of McCool, stating that the October 11, 2006 letter stated

an erroneous reason for the decision to rescind the policy.  The reference in that letter to Davis's criminal and social history was incorrect and apparently transposed from other correspondence by mistake.  In fact, American General possessed no records indicating a criminal or social history that was not disclosed.  However, American General maintained that the policy was nevertheless still due to be rescinded as much of the medical information Davis provided was incorrect.  Wickes specifically pointed to a history of hypertension, seizure disorder, a heart condition, and the receipt of social security benefits since 1985.  Wickes also noted that the financial information submitted by Davis was incorrect.  She concluded by stating that if American General had possessed this information at the time the application was made, it would never have issued the policy.  Wickes stated that as a result, the policy was rescinded, making coverage null and void from its inception date.

On April 23, 2007, American General filed this declaratory judgment action against Billups.   On May 18, 2007, Billups answered American General's Complaint for Declaratory Judgment and filed her counterclaim for breach of contract and bad faith.  On October 19, 2007, Billups filed a

Third-Party Complaint against Best Quote and Steve Rubin for breach of contract and negligence and wantonness.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.

1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party." *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448

(1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* at 250.

IV.    Discussion.

The complaint by American General seeks a declaratory judgment that the company effectively rescinded Davis's life insurance policy, Policy YM00260536, based on material misrepresentations contained in the policy application.  The counterclaim by Billups alleges breach of contract and bad faith by American General for its failure to perform an objective investigation of Billups's claim and to honor Davis's life insurance policy. The third party complaint by Billups alleges breach of contract, negligence, and wantonness against Best Quote and Rubin for failure to procure insurance for Davis.   Billups has moved for summary judgment on the breach of contract claim.  American General, Best Quote, and Rubin have moved for summary judgment on all claims pending against them.   The Court addresses each of these issues below.

A.    American General.

1.    Breach of Contract.

American General argues that it is entitled to summary judgment on the breach of contract claim because the policy in question was obtained by Davis due to material misrepresentations regarding his health.  Billups also seeks summary judgment, claiming that American General waived all defenses in its October 11, 2006 letter denying coverage on the basis of Davis's failure to disclose negative social and criminal history.  In the alternative, Billups argues that the materiality of any misrepresentations made by Davis is a question of fact for a jury to decide.

a.    Waiver.

Billups argues that because American General originally asserted, in its October 11, 2006 denial letter, that Davis's policy was void for misrepresentations regarding his negative social and criminal history, it waived all other bases for denial.  It is undisputed that American General's October 11, 2006 letter stated that Davis's policy was void due to his criminal and social history.  (Doc. 70, Ex. 7.)   It is also undisputed that in an April 20, 2007 letter, American General noted that the actual reason for recision lay in incorrect statements regarding Davis's health and apologized

for the mistake.  (Doc. 70, Ex. 8.)  Therefore, the question as to whether waiver applies is a purely legal one.

Under Alabama law, when an insurer "specifically denies liability on one ground, it thereby waives all other grounds of forfeiture." *American Auto. Ins. Co. v. English*, 94 So. 2d 397, 402 (Ala. 1957).  While courts are "extremely liberal in their application of the doctrines of waiver and estoppel to obviate forfeiture of a contract of insurance," it is equally the case that "those doctrines cannot be used to extend the coverage of an insurance policy or to create a primary liability." *Kaminer v. Franklin Life Ins. Co.*, 472 F.2d 1073, 1076-77 (5th Cir. 1973) (discussing waiver when insurance company initially cited suicide as a basis for denying coverage rather than decedent's failure to pay the first premium until two days after her death); *Home Indem. Co. v. Reed Equipment Co.*, 381 So. 2d 45, 51 (Ala. 1980) ("Thus, coverage under an insurance policy cannot be created or enlarged by waiver or estoppel . . . .").  The principle behind this doctrine is an equitable one.  Courts are willing to take steps to prevent an insured, who has faithfully paid premiums on a valid insurance policy, from forfeiting the right to recover on that policy.  By the same logic, however, when the

more fundamental question of coverage is in play, the doctrine of forfeiture should not force an insurance company to pay a claim on a policy that was never valid. *Kaminer*, 472 F.2d at 1077 ("To hold the defendant estopped to assert that it did not contract to insure the life of a deceased person would be a perversion of an equitable doctrine.").

When the issuance of an insurance policy is induced by a fraudulent misrepresentation, it is void *ab initio*. *See State Farm Mut. Auto. Ins. Co. v. Lee*, 343 F.2d 55, 58 (5th Cir. 1965) ("[A] fraudulent representation in the application inducing the execution of a policy of insurance can generally be availed of to avoid the policy, just as any contract can be avoided for fraud ab initio."). As discussed further *infra,* it is appropriate in such an instance for the insurance company to rescind a policy based on fraudulent misrepresentation if those misrepresentations are material, or if the insurance company would not have issued the policy or would have required a greater premium if it had possessed truthful answers. *See Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005). If the policy is rescinded, "the proper remedy is to restore all parties to the status quo ante, and each party should be placed in a position that it would have occupied had the

conveyance not been made." *Putman Constr. & Realty Co. v. Byrd*, 632 So. 2d 961, 967 (Ala. 1992); *Lexington Ins. Co. v. Wolfe*, 2008 U.S. Dist. LEXIS 102282, *8-9 (S.D. Ala. Dec. 16, 2008).  In other words, recision "in essence wipes out or erases the policy from the very beginning; it never existed." *In re Healthsouth Corp. Ins. Litig.*, 308 F. Supp. 2d 1253, 1290 (N.D. Ala. 2004).

Because American General's defense goes directly to the existence of a life insurance policy, the doctrine of waiver is inapplicable.  American General is seeking to rescind the life insurance policy in question due to material misrepresentations in the application for that policy.  If American General is correct in this contention, then the policy itself never existed; it was void *ab initio*.  Applying the doctrine of waiver in this instance would prevent American General from relying on the non-existence of the policy, thus effectively creating coverage where none existed.  To do so would violate the well settled law in Alabama that waiver and estoppel cannot create or enlarge insurance coverage.  *Kaminer*, 472 F.2d at 1076-77; *Home Indem. Co.*, 381 So. 2d at 51.  American General does not argue that Davis acted in some way that violated a provision of a valid insurance policy, or

that the particular injury Davis suffered is not covered by a valid policy.

Instead, it argues that if Davis had provided the correct information before

the policy even came into existence, it never would have been issued.

Therefore, the doctrine of waiver does not apply, and American General is

not estopped from arguing that Davis's policy was void due to material

misrepresentations regarding his medical history.

> b.  Avoidance of the Policy.

Alabama law is clear that insurance companies may avoid an insurance

policy based on material misrepresentations made by the insured at the time

of application.  In order for an insurance company to take this step, these

misrepresentations, omissions, or incorrect statements must be:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard
assumed by the insurer; or

(3) The insurer in good faith would either not have issued the
policy or contract, or would not have issued a policy or contract
at the premium rate as applied for, or would not have issued a
policy or contract in as large an amount or would not have
provided coverage with respect to the hazard resulting in the
loss if the true facts had been made known to the insurer as
required either by the application for the policy or contract or
otherwise.

ALA. CODE § 27-14-7

It is not necessary that the insured intended to deceive in making incorrect statements in an insurance application.  "[E]ven if innocently made, an incorrect statement that is material to the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy in the manner that it did provides a basis for the insurer to avoid the policy." *Lewis*, 910 So. 2d at 762; *Duren v. Northwestern Nat'l Life Ins. Co.*, 581 So. 2d 810, 813 (Ala. 1991) ("It was unnecessary, therefore, for plaintiff to have provided incorrect information with an intent to deceive.  If she innocently made an incorrect statement that was material to acceptance of the risk, or would have caused National, in good faith, not to have issued the policy as it did, then National could have denied her claim and voided her policy.") (quoting *National Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1361 (Ala. 1982)).

It is clear from the evidence that the information contained on Davis's application was incorrect.  The application contains answers in the negative in response to questions regarding a history of high blood pressure, seizures and mental disorders, and disability payments.   Documentation and the

testimony of Davis's treating physician, Dr. Gentry, shows that these questions should have been answered in the affirmative.  Gentry Depo. at 29:2-16, 44:17-48:22, 83:5-10; Social Security Administration letter, Doc. 74, Ex. N.

The inquiry is not complete, however, when the insurance company establishes that incorrect information was supplied by the insured. American General must also establish that the misrepresentation was material.  Alabama courts define materiality as when:

> If the fact concealed would have shown the liability of the insurer for the loss to be greater than appeared upon the facts disclosed, and would, in consequence, have induced a rational underwriter, governed by principles presumed to govern prudent and intelligent underwriters in practice, to have rejected the risk or accepted it only at an increased premium, the fact is material.

*Clark v. Alabama Farm Bureau Mut. Casualty Ins. Co.*, 465 So. 2d 1135, 1139 (Ala. Civ. App. 1984) (citations omitted).  The insurance company may avoid the policy if the material misrepresentations would have led the company to "declin[e] to issue an insurance policy on decedent's life or . . . insur[e] decedent's life only at a higher premium rate had it known" the insured's true medical history.  *See Inglish v. United Services General Life Co.*, 394

Page 20 of  33

So. 2d 960, 966 (Ala. Civ. App. 1980).  Materiality "is generally a jury question under Alabama law." *Lewis*, 910 So. 2d at 762.  Despite this general rule, certain ailments have been found to be material as a matter of law.  *See Stephens v. Guardian Life Ins. Co.,* 742 F.2d 1329, 1333 n.3 (11th Cir. 1984) (discussing Alabama case law and noting that certain fatal maladies are material as matter of law, including tuberculosis, cancer, and Hodgkin's disease).  The courts have also stated that certain ailments are not, as a matter of law at least, material, and that the materiality of misrepresentations regarding them should be submitted to a jury. *National Life & Acci. Ins. Co. v. Collins*, 12 So. 2d 353, 354 (Ala. 1943) (syphilis and cirrhosis of the liver); *Richerzhagen v. National Home Life Assurance Co.*, 523 So. 2d 344, 347 (Ala. 1988) (high blood pressure).

If the facts as to materiality are undisputed, however, then "the question need not be submitted to the jury." *Richerzhagen,* 523 So. 2d 344 at 347 (discussing materiality of high blood pressure).  Furthermore, Alabama courts recently have adopted the view of other courts that if the insurer specifically inquires as to a fact, the insured is put on notice that the insurer considers that fact material.  *Lewis*, 910 So. 2d at 762 (quoting

*Christiania Gen. Ins. Corp. of New York v. Great American Ins. Co.*, 979 F.2d 268, 280 (2d Cir. 1992); *Jaunich v. National Union Fire Ins. Co. of Pittsburgh*, 647 F. Supp. 209, 211 (N.D. Cal. 1986)).  This position is sound, as it avoids the need to rely on self-serving, after-the-fact assertions by the insurance company on the materiality of misrepresentations by revealing the company's *ex ante* view of certain aspects of an insured's history.

Davis's application contains inaccurate responses to three specific questions by American General.   While the American General application is not as specific as in *Lewis*—the application in that matter stated categorically that a yes answer rendered the applicant ineligible for coverage—it nevertheless contains inaccurate negative responses to specific questions regarding a history of high blood pressure, seizures, and disability benefits.[2]  Given that American General, in a life insurance application that contained only 4 pages on substantive medical history, included these questions regarding specific aspects of the applicant's medical history, it is

---

[2]  In contrast, Davis's failure to indicate a history of depression was not in response to a direct question by the insurer, but rather is only arguably in response to an inquiry regarding a "mental or nervous disorder."

clear under Alabama law that Davis was on notice that these issues were material to his ability to obtain coverage.

Furthermore, even if such direct questions were insufficient to establish the materiality of the misleading statements on Davis's application, Billups has failed to raise a genuine issue of fact as to American General's assertion that the misrepresentations were material and that if the correct information had been given, no policy would have issued. American General representatives testified that Davis would not have received the policy in question if American General had received truthful responses.  *See* Yasso Depo. at 124:3-7 ("He never would have gotten five hundred with the income that he had.  And he never would have gotten best class with seizure history and hypertension."); Grady Depo. at 107:4-10; Expert Report of Richard Puls at 2 ("The recision of the policy was valid because there was significant medical and financial history that was not admitted by Mr. Davis on his application and medical exam.").  While the insurer, "cannot be allowed automatically to avoid coverage simply because its own employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact," when the company

does provide such testimony, it is incumbent upon the party opposing summary judgment to present some evidence establishing a question of fact. *First Fin. Ins. Co. v. Tillery*, 626 So. 2d 1252, 1255 (Ala. 1993); *Richerzhagen*, 523 So. 2d at 347 (granting summary judgment because the "evidence is undisputed that if Lambert had a blood pressure problem and the insurer had had knowledge of that problem, then that information would have had a negative effect on his ability to obtain insurance").

Billups has attempted to use Dr. Gentry's testimony to show that any misrepresentations on Davis's application were not material.  For a number of reasons, Dr. Gentry's testimony does not establish a question of fact on this point.  Even if Dr. Gentry is qualified to analyze the materiality of certain health information, an assumption American General contends should be rejected, his testimony seems to support the insurance company's position.  Dr. Gentry testified that in regards to Davis's misrepresented health history, "during the last year or so of his life, all of those things were very prominent . . . in causing his death."  Gentry Depo. at 59:12-16.  He further stated that "you certainly would prefer not to have those things . . . because they could affect your life expectancy."  Gentry Depo. at 97:9-13.

Life expectancy is the *sine qua non* of life insurance, and Dr. Gentry's testimony supports, rather than refutes, American General's position.

Even if a misrepresentation is material, summary judgment may still be inappropriate if the insured can show a question of fact as to whether "the insurer either knew the true facts or had sufficient indication that would put a prudent person on notice so as to induce an inquiry which, if done with reasonable thoroughness, would reveal the truth." *Tillery*, 626 So. 2d at 1256 (citing *State Farm General Ins. Co. v. Oliver*, 658 F. Supp. 1546, 1552 (N.D. Ala. 1987)); *Bankers Life & Casualty Co. v. Long*, 345 So. 2d 1321, 1323 (Ala. 1977). While certain circumstances might lead a prudent person to investigate, "[a]n insurance company does not normally have a duty to inquire further to verify that an applicant has told it the truth." *Old Southern Life Ins. Co. v. Spann*, 472 So. 2d 987, 989 (Ala. 1985). The insured must therefore demonstrate a question of fact regarding the insurance company's duty to further investigate material misrepresentations.

Billups has shown no such question of fact. Billups points to two aspects of the application process that she claims should have alerted

American General that the health information was incorrect.  First, the application may contain whited out information.  Wickes Depo. 75:12-76:1 ("It's these funny little things in that blank space . . . I don't know whether that's White Out or whether it's just a circle that it is empty, indicating that it's empty.").  It is unclear, however, how these blank spaces would have placed American General on notice that it should further investigate Davis's medical history.  All of these suspect areas are located in Part A of the application.[3]  The health information in question is contained in Part B. There are no anomalous sections in Part B.  *See* Doc. 74, Ex. A.  Secondly, Billups claims that a Medical Information Bureau ("MIB") Report commissioned by American General placed the company on notice that it should conduct further investigation.  But Billups's own expert, Kenneth Thompson ("Thompson"), testified that there was nothing contained in the MIB report that should have caused American General to do any type of investigation on Davis.[4]  *See* Thompson Depo. 58:11-22.  As there is no

---

[3] Grady testified that the anomalous blanks in Part A did not cause her concern as an underwriter.  Grady Depo. 87:2-22.

[4] Billups speculates that the document referred to as the MIB report in Thompson's deposition is not the complete report.  Billups then makes the leap that a jury could infer that the completed report would show that American General should have

evidence to suggest that American General was on notice of the falsehoods in Davis's insurance application, this is not the type of case in which the insurance company should pay the price for failing to investigate misleading statements on the insured's application.

Finally, even if material misrepresentations are made on an insurance application, the policy that results from that application remains valid if the mistakes result "solely from an act or oversight of the soliciting agent taking the application, without the knowledge of the insured." *National Life & Accident Ins. Co. v. Allen*, 285 Ala. 551, 554 (Ala. 1970). Billups claims that a question of fact exists as to whether "the alleged misrepresentations or omissions are . . . attributable to Mr. Davis rather than to American General's agent Rubin."[5] Doc. 84 at 13. While this alternative theory might

───────────────

conducted further investigation. The only evidence Billups offers to support the assertion that the document is incomplete is Thompson's statement that the report given to him "doesn't look like any MIB report I've ever seen." Thompson Depo. 59:15-16. This statement loses much of its force, however, given Thompson's response to an earlier question about whether he ever sees "these type of reports." He responded, "Actually I'm not supposed to . . . So the answer is no, I never — I don't see them." Thompson Depo. 51:3-52:4.

[5] Billups implication that Rubin was responsible for any misleading statements in the application is unavailing given that Portamedic's Meade, and not Rubin, was responsible for collecting this information.

have an affect on the significance of the misrepresentations, Billups offers no evidence that any agent of American General actively attempted to include fraudulent information on Davis's application.  Alabama courts have limited the agent exception, stating, "Absent misrepresentations, fraud, or other deceit by the agent, a person able to read and write is bound by an insurance application signed by him or her, whether or not he or she reads it." *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So. 2d 759, 767 (Ala. 2004) (rejecting argument that the insured's policy was valid because agent had incorrectly recorded the oral information given by the insured).  Billups attempts to skirt this rule by claiming that Davis could not read.  Billups Depo. at 33:9-10.  Even if this were true, the "long-established rule in Alabama" is that the same standard applies "to one who cannot read, if he neglects to have it read, or to inquire as to its contents." *Green Tree Fin. Corp. v. Lewis*, 813 So. 2d 820, 825 (Ala. 2001) (citations omitted).  Billups has provided no evidence, beyond mere speculation, that Davis was misled in any way by any agent of American General.[6]  It is undisputed that Davis

---

[6] Billups does argue that certain signatures on the insurance documents do not appear to be her father's, namely on the "Whole Blood Tamper Evident Tape" and "Amendment of Application." Billups Depo. at 52:8-17, 48:3-18.  She does not, however,

signed the document containing the misrepresentations.  He is therefore

responsible for those statements, and Billups cannot shift the blame to

others.   Therefore, as there is no genuine question of fact as to the

materiality of the false statements contained in Davis's insurance

application, American General's motion for summary judgment is due to be

granted as to the breach of contract claim.

        2.    Bad Faith Claim.

In order to press a bad faith claim under Alabama law, a plaintiff must

show:

> (1) an insurance contract between the parties and a breach
> thereof by the defendant;

> (2) an intentional refusal to pay the insured's claim;

> (3) the absence of any reasonable legitimate or arguable reason
> for that refusal;

> (4) the insurer's actual knowledge of any legitimate or arguable
> reason.

*State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999);

*Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061, 1077 (S.D. Ala. 2007) ("

---

claim that the signatures on the insurance application itself and health history form are
not her father's.  *Id.* at 35:16-21, 42:16-23.

[Extraordinary bad faith exists] if the insurer recklessly or intentionally failed to properly investigate a claim or to subject the results of its investigation to a cognitive evaluation. . . .  The key issue in the ordinary bad faith case is whether, when the claim was denied, the insurer possessed a debatable reason for the denial.").  Furthermore, "unless the plaintiff is entitled to recover on the contract, a bad faith claim cannot be maintained." *Slade*, 747 So. 2d at 318, *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982) ("[I]f the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.").

Billups claims fail for two reasons.  First, as discussed above, American General has succeeded in showing that summary judgment is due on Billups breach of contract claim.  Therefore, Billups fails to meet the first element requiring breach of contract.  But even if Billups's breach of contract claim was not ripe for summary judgment, it is abundantly clear that American General has shown a "reasonably legitimate or arguable reason" for its refusal, and the record is replete, as discussed *supra*, with examples of

American General's efforts to investigate the claim of Billups once it was made.  Therefore, it is evident that American General's motion for summary judgment as to Billups's bad faith claim is due to be granted.

B.     Best Quote and Rubin.

Best Quote and Rubin argue that summary judgment is due to be granted on the breach of contract claim against them because there is no evidence they breached a contract with Davis.  They further argue that summary judgment should also be granted on the negligent and wantonness claims as there is no evidence of breach of duty or that such a breach proximately caused the damage complained of by Billups.  Given the undisputed evidence, summary judgment is due to be granted on all claims against Best Quote and Davis.

It is well settled that "when an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom."  *Lewis v. Roberts*, 630 So. 2d 355, 357 (Ala. 1993).  The agent must exercise "reasonable skill, care, and diligence in effecting coverage."  *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So.

2d 1060, 1065 (Ala. 1978).  If the agent fails to so act, the policyholder "may sue either for breach of the contract or, in tort, for breach of duty imposed on the broker."  *Waldon v. Commercial Bank*, 50 Ala. App. 567, 570 (Ala. Civ. App. 1973).

Billups appears to argue that if American General successfully rescinds Davis's insurance policy, Best Quote and Rubin would have breached their contract to  acquire insurance for Davis and would have proximately caused damage to Billups.  However, it is unclear from the undisputed facts what possible contractual duty Best Quote and Rubin could have violated.  As discussed above, it is clear that Davis's application contains material misrepresentations regarding his medical history and that American General is rescinding that policy because of those misrepresentations.  *See* Doc. 77, Ex. I at 2; Ex. C.  It is also undisputed that Best Quote and Rubin had nothing to do with the collection of information related to medical history; that information was all gathered by Meade outside of the presence of Best Quote or Rubin.  *See* Doc. 72 at 3-4, ¶ 5; Doc. 86 at 6, ¶ 24; Thompson Depo. 243:10-244:17.  In short, to the extent Davis's insurance policy is rescinded, that recision will rest on questions asked and answers given during the

medical screening interview with Meade.  Had those answers been truthful and had the policy then been issued, American General would be in the position of paying the claim on the policy.  There is no evidence that any breach of a duty by Best Quote and Rubin led to the misrepresentations in question and no evidence that the proximate cause of the recession of the insurance policy was anything other than Davis's own misrepresentations. Therefore, summary judgment is due to be granted on all claims against Best Quote and Rubin.

V.    Conclusion.

For the reasons stated above, Billups's motion for summary judgment is denied and the motions for summary judgment filed by American General, Davis, and Best Quote will be granted in all respects.  A separate order will be entered.

Done this 11th day of May 2009.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671
